# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

LORENZO K. [1],

      Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,[2]

      Defendant.

CASE NO. 3:23-CV-550-SJF

## OPINION and ORDER

Plaintiff Lorenzo K. ("Mr. K") seeks judicial review of the Social Security
Commissioner's decision denying his applications for Disability Insurance Benefits
("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social
Security Act ("Act"). The parties consented to the jurisdiction of a magistrate judge
under 28 U.S.C. § 636(c) on June 29, 2023. [DE 7]. This case was then reassigned to the
undersigned magistrate judge on August 15, 2024, and the parties consented to the
continued exercise of jurisdiction to a magistrate judge. [DE 17]. Accordingly, this Court
now enters a ruling pursuant to 28 USC § 636(c) and 42 U.S.C. §405(g). [DE 7, DE 17].

For the reasons discussed below, the Court **AFFIRMS** the decision of the
Commissioner of the Social Security Administration ("SSA").

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the
Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Leland Dudek was sworn into the office of Commissioner of Social Security on February 16, 2025, and
he is substituted as Defendant is his official capacity as Commissioner. *See* Fed. R. Civ. P. 25(d).

## I.    OVERVIEW OF THE CASE

Mr. K applied for DIB and SSI on October 30, 2020. In his applications, he alleged a disability onset date of October 15, 2019. Mr. K's applications were denied initially on March 24, 2021, and upon reconsideration on September 9, 2021. Mr. K filed a written request for hearing on September 17, 2021. Following both a telephone hearing on January 26, 2022, and responses to post hearing interrogatories propounded to a medical doctor and a vocational expert, the Administrative Law Judge ("ALJ") issued a decision on November 29, 2022, which affirmed the SSA's denial of benefits.

On April 19, 2023, the Appeals Council denied Mr. K's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Mr. K timely filed this action on June 13, 2023. Mr. K filed his opening brief on September 6, 2023, and the Commissioner filed his Memorandum in Support of Decision on November 15, 2023. This matter became ripe on November 21, 2023, when Mr. K filed his reply.

## II.    APPLICABLE STANDARDS

### A.    Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work

activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 4041520; 416.920.[3] The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must

confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all factual issues have been resolved and 'the record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## III.    Discussion

### A.    Summary of the ALJ's Decision Denying Benefits

Mr. K had a telephone hearing before an ALJ on January 26, 2022. About three months after the hearing, on April 26, 2022, the ALJ propounded interrogatories to Dr. Lee Fischer, M.D., to which Dr. Fischer responded on April 27, 2022. (AR 853). The ALJ also propounded interrogatories to a vocational expert ("VE") on August 1, 2022, to which the VE responded on August 2, 2022. (AR 292, AR 309). On November 29, 2022, the ALJ issued a written decision finding that Mr. K was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Mr. K had not engaged in substantial gainful activity since his alleged onset date of October 15, 2019. (AR 25).

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of

impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Mr. K suffers from the following severe impairments: osteoarthritis (OA), rotator cuff tear, and impingement syndrome of the left shoulder; hypertension; diabetes mellitus, type 2; degenerative disc disease and osteoarthritis of the cervical spine with radiculopathy; osteoarthritis and nondisplaced patella fracture of the left knee; ST-elevation myocardial infarction (STEMI); coronary artery disease (CAD); and atrial fibrillation (A-fib). On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Mr. K suffers from the non-severe impairments of history of right fifth finger injury; and alcohol, tobacco, and marijuana abuse. (AR 25).

At Step Three, the ALJ determined that none of Mr. K's severe impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Listings 1.15, 1.16, 1.18, 4.00, 4.04, 4.05, and 9.00. (AR 26). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. K can perform his past relevant work based on his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To

determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their

intensity, persistence, and limiting effects, and the consistency of these symptoms with

the objective medical evidence and other evidence in the record. 20 C.F.R. §

404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light,

medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Mr. K has the

RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), but with certain

additional limitations:

> [E]xcept the claimant is able to sit, stand, and/or walk for two hours each
> at a time; is unable to kneel, crouch, crawl, or climb ladders, ropes, or
> scaffolds; is able to occasionally climb ramps and stairs; and can
> frequently balance and stoop. In addition, with the nondominant left
> upper extremity the claimant is limited to no overhead reaching,
> occasional reaching in all other directions, and occasional pushing and
> pulling. Also, the claimant must have no exposure to unprotected heights
> and cannot operate a motor vehicle as part of work duties. Additionally,
> the claimant is limited to occasional exposure to moving mechanical parts,
> humidity, wetness, extreme temperatures, and pulmonary irritants such
> as fumes, dust, or odors. The claimant can have frequent exposure to
> vibration.

(AR 27). Given that Mr. K was limited to less than the full range of light work, at Step

Four, the ALJ determined that he could not perform his past relevant work as a

woodworking machine feeder; hand packager; and cutter, hand II. (AR 30).

Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the

Commissioner need only show that the claimant can perform some type of substantial

gainful work existing in the national economy in significant numbers. 42 U.S.C.

§ 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which

occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan.

1, 1983). VEs generally use information from the Dictionary of Occupational Titles

("DOT") and their professional experience to inform their assessments of a claimant's ability to perform certain types of work. *See* SSR 24-3p. Here, the VE identified three jobs that Mr. K could still perform with his RFC—usher, counter clerk, and school bus monitor—which respectively, have 35,300 jobs nationally, 26,900 jobs nationally, and 88,100 jobs nationally. (AR 31).

Finding that Mr. K could make an adjustment to other work that existed in significant numbers, the ALJ determined that Mr. K was not under a disability, as defined in the Act, from his alleged onset date through the date of the decision. (AR 32).

## B.    Issues for Review

Mr. K raises two arguments on judicial review. Both arguments center on the following portion of his RFC: that he "is able to sit, stand, and/or walk for two hours each at a time." [DE 10 at 12]. First, Mr. K argues that this portion of the RFC is impermissibly vague and fails to adequately articulate the extent that he can sit, walk, or stand. Second, Mr. K argues that the ALJ erred by failing to reconcile a conflict between the DOT and the VE's testimony regarding these limitations—the conflict resulting from this RFC limitation and the finding that he has an RFC for light work. For these reasons, Mr. K contends that remand for further administrative proceedings is warranted.

 In response, the Commissioner contends that Mr. K's first argument ignores the plain meaning of the RFC as well as the information included in the post-hearing interrogatories. The Commissioner also contends that the VE testimony on Mr. K's

abilities to sit, stand, or walk is not a conflict because the DOT does not address this. Thus, the Commissioner contends that the ALJ's decision should be affirmed.

The Court addresses each argument in turn.

### 1. Whether the Sit, Stand, And/or Walk Limitation in the RFC is Impermissibly Vague

#### a. Standards for RFC Assessment

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the **most** someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to

produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

### b.    The ALJ's Findings

The ALJ found that the Mr. K's impairments could reasonably be expected to cause his alleged symptoms. (AR 29). But the ALJ then found that Mr. K's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence. (*Id.*). The ALJ observed that Mr. K had received conservative and routine treatment as of his alleged onset date and that his spinal, musculoskeletal, and sensory deficits appeared to be stable with treatment with no significant worsening in Mr. K's functional abilities. (*Id.*). The ALJ said that he considered and accommodated the reported limitations in the RFC (*Id.*).

The ALJ reviewed the testimony from medical experts, including the opinion of Dr. Lee Fischer, M.D., to whom the ALJ propounded post-hearing interrogatories. Relevant to Mr. K's arguments here, Dr. Fischer opined that Mr. K had an RFC for light work. (AR 855). Dr. Fischer also found that Mr. K could sit, stand, and walk for two hours at one time without interruption, and that he could sit, stand, and walk for 6 hours total in an 8-hour workday:

**II. SITTING/STANDING/WALKING**

Please check how many <u>hours</u> the individual can (if less than one hour, how many minutes):

### At One Time without Interruption

| | Minutes | | Hours | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | ☐ 1 | ☒ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | |
| A. Sit | _____ | ☐ 1 | ☒ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | |
| B. Stand | _____ | ☐ 1 | ☒ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | |
| C. Walk | _____ | ☐ 1 | ☒ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☐ 6 | ☐ 7 | ☐ 8 | |

### Total in an 8 hour work day

| | Minutes | | Hours | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| A. Sit | _____ | ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☒ 6 | ☐ 7 | ☐ 8 | |
| B. Stand | _____ | ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☒ 6 | · ☐ 7 | ☐ 8 | |
| C. Walk | _____ | ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | ☒ 6 | ☐ 7 | ☐ 8 | |

(AR 857). The ALJ found Dr. Fischer's opinion to be persuasive, explaining that Dr.
Fischer "opined to the limitations set forth in the claimant's above residual functional
capacity." (AR 29-30).

At the hearing, the ALJ also presented four hypotheticals to a VE, although none
of the hypotheticals included the RFC limitation at issue here:

> Q  For the purpose of my hypothetical questions, please assume
> an individual with the same vocational characteristics as the
> claimant.  He has been closely approaching advanced age throughout
> the period of issue.  Has a high-school education and work history
> as you describe it.  Hypothetical 1, assume the individual is
> limited to a range of light work, which are lifting, carrying,
> pushing or pulling 20 pounds occasionally, ten pounds frequently,
> standing and walking six hours in an eight-hour day, sitting
> six hours in an eight-hour day, never climbing ladders, ropes, or
> scaffolds, occasional crawling, frequently performing other
> postural maneuvers.  With the non-dominant left upper extremity
> able to do occasional lifting and occasional reaching.  Excuse me,
> sir?

12

...

Q  With the non-dominant left upper extremity, the individual's able to do occasional lifting and occasional reaching in front and overhead.  There should be no concentrated exposure to vibration, and no concentrated exposure to workplace hazards such as dangerous moving machinery or unprotected heights.
Ms. Kendrick, do you need anything repeated or clarified?

A  No, Your Honor.

...

Q  Would there be other jobs the hypothetical individual could perform?

A  At the light level, jobs that would soundly fit in the hypothetical given would include a furniture rental clerk, which has a DOT code of 295.357-018, light exertion level, SVP 2, 56,000 jobs in the national economy.  A second position would be an usher, which has a DOT code of 344.677-014, light exertional level, SVP 2, 5,000 jobs in the national economy, and a third position will be an office helper, which has a DOT code of 239.567-010, light exertional level, SVP 2, 10,000 jobs in the national economy.

Q  Hypothetical 2, assume the same limitations as the first hypothetical, but further assume the individual can never kneel or crawl.  Does that have any impact on the ability to perform those jobs?

A  No, Your Honor.  There would be no changes to any of the jobs there.

Q  Hypothetical 3, assume the same limitations of the previous hypotheticals, but further assume the individual is limited to frequent handling, fingering, and feeling with the dominant right upper extremity.  Does that have any impact on the ability to perform the jobs you identified?

A  No, Your Honor, not for the jobs that were given within the hypothetical.  No changes.

Q  Hypothetical 4, assume the same limitations in the previous hypotheticals, but we'll reduce handling, fingering, feeling with the dominant right upper extremity to occasional.  Would that have any impact on the ability to perform the jobs identified?

A  Yes, Your Honor.  The job as the office helper would rule out.  The only job that would remain, per the DOT, would be the furniture rental clerk and the usher.

Q  Would be no substitute for office helper?

A  There is only one other job that would fit what we look in the DOT for that hypothetical, and that would be a counter clerk, which has a DOT code of 249.366-010, light exertional level, SVP 2, 1,000 jobs in the national economy.

14

(AR 66-68).

After the hearing, the ALJ propounded interrogatories to another VE. There, the ALJ presented the following RFC that does include the identified limitation:

> Assume a hypothetical individual who . . . has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the hypothetical individual is able to **sit, stand, and/or walk for two hours each at a time**; is unable to kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; is able to occasionally climb ramps and stairs; and can frequently balance and stoop.  In addition, with the nondominant left upper extremity the hypothetical individual cannot reach overhead, but can frequently push, pull, and reach in other directions. Also, the individual must have no exposure to unprotected heights and cannot operate a motor vehicle as part of work duties. Additionally, the individual is limited to no more than a loud noise level and occasional exposure to moving mechanical parts, humidity, wetness, extreme temperatures, and pulmonary irritants such as fumes, dust, or odors.  The individual can have frequent exposure to vibration.

(AR 305) (emphasis added). The VE's response to the interrogatory identified three jobs that Mr. K could still perform with this RFC: usher, counter clerk, and school bus monitor—the three jobs identified in the ALJ's decision. (AR 308). The ALJ's decision considered the testimony of the vocational expert and found, under SSR-004p, that the VE's testimony was consistent with the information contained in the DOT. (AR 31).

### c.    Mr. K's Vagueness Arguments

Mr. K contends that the RFC limitation that he "is able to sit, stand, and/or walk for two hours each at a time" is impermissibly vague and fails to articulate the extent that he can sit, walk, or stand during an eight-hour workday. Mr. K contends that there are two possible interpretations of this RFC – first, that he can only sit for two hours total, stand for two hours total, and walk for two hours total per day, amounting to only

six hours of exertional activity. Mr. K contends that this plain meaning suggests that he can only perform a less than sedentary RFC. As part of this argument, Mr. K also raises the issue of the RFC presented to the VE at the hearing and the RFC presented the VE in the post-hearing interrogatories, contending that it is unclear which RFC applies, and whether either RFC is consistent with the limitations opined by Dr. Fisher. Moreover, Mr. K contends that the second interpretation raised by the RFC—considering the RFC to mean more than six hours of exertional activity—suggests that he needs to alternate from one position to another after, at most, two hours, but lacks sufficient detail.

To begin, part of Mr. K's first argument contends that the RFC presented to the VE at the hearing is different from the RFC presented to the VE in post hearing interrogatories, and both RFCs are different from that of Dr. Fischer. Mr. K also contends that it is unclear which RFC was used in the decision. But review of the record shows that, based on the use of post-hearing interrogatories, the ALJ did not rely on the VE's hearing testimony. Moreover, the RFC presented in the post-hearing interrogatories is plainly consistent with that in Dr. Fischer's opinion and the RFC in the decision. In the interrogatories, the ALJ presented a hypothetical of light work "with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk for six hours in an eight-hour workday, except: the hypothetical individual is able to sit, stand, and/or walk for two hours each at a time." (AR 304-05). Dr. Fischer's form checks these same boxes to show that Mr. K can do each activity "at one time without interruption for two hours" and for a total of six hours in an 8 hour workday. (AR 457). And though the RFC in the decision does not explicitly state he can

do each activity for a total of six hours in a workday like Dr. Fischer's opinion states through the checkboxes, the ALJ found that Mr. K retained an RFC for light work—which is defined to include "frequent lifting or carrying of objects"—and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Thus, as the Commissioner contends, "the only difference is that the ALJ removed the definition of light work from the ultimate RFC." [DE 14 at 3].

Still, Mr. K contends that the ALJ's interrogatory describes an individual who can "sit, stand, and/or walk for six hours in an eight-hour workday, except: the hypothetical individual is able to sit, stand, and/or walk for two hours each at a time, . . ." [DE 15 at 2, citing AR 305]. Mr. K contends that the plain meaning is that for six hours out of an eight-hour day, he can only do each activity in two-hour increments. Mr. K contends that, if six hours of total activity is the most he can do, then he has a less than a sedentary RFC. The Commissioner, however, contends that this argument is contrary to, and disregards, the modifier of "at a time." The Court agrees that a commonsensical reading of the addition of "at a time" suggests the length he could do each activity for a set period, not total for the day. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (observing that "we give [an ALJ's] opinion a commonsensical reading rather than nitpicking at it") (quoting *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). As contended by the Commissioner, the RFC contemplates that Mr. K can perform each of these three

exertional activities in two-hour increments; with an RFC of light work, he can do so for up to six hours throughout an eight-hour workday.

Mr. K also contends that, even with this interpretation, the RFC is still ambiguous. Mr. K states that even if he can perform more than two hours each of sitting, standing, and/or walking cumulatively; the use of "at a time" suggests that he must alternate from one position to the other after at most two hours. Mr. K contends that the RFC leaves unanswered the following questions: first, if he must alternate from standing and/or walking to sitting, how long must he sit before he can resume standing and/or walking? Is he limited to standing for two hours at a time and also walking for two hours at a time, or, standing and/or walking for two hours at a time? [DE 10 at 13]. Mr. K also contends that the RFC fails to mention whether such transitions would require breaks and directs the Court to the questions posed by his representative at the hearing showing that a sit-stand option precludes two jobs presented by the VE there.

But, as the Commissioner contends, these questions ignore what the RFC assessment is—an assessment of the most Mr. K can do despite his limitations. The RFC acknowledges his limitations as applied to the workplace and, as the Commissioner contends, creates flexibilities to reflect multiple job environments. And, as stated, the ALJ did not rely on the VE's testimony from the hearing to assess the RFC and available work. Instead, the ALJ cited job information from the post-hearing interrogatories. Without more, the Court cannot find that the RFC creates an ambiguity that requires remand.

## 2.    Whether there is a Conflict Between the VE and DOT

Next, Mr. K states that the ALJ failed to identify and adequately resolve the apparent conflict between his RFC limitation "to sit, stand, and/or walk for two hours each at a time" and the requirements of light work. Mr. K explains that light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing,* or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (emphasis added). SSR 83-10 provides a more concrete definition, stating light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83–10, 1983 WL 31251, at *5–*6 (January 1, 1983). Based on this, Mr. K contends that light work requires an individual to walk or stand for six hours of an eight-hour workday—while Mr. K's RFC provides that he could only stand, sit, or walk for two hours each at a time.

In support, Mr. K first points to SSR 00-4p. *See* Pol'y Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000). SSR 00-04p provides that ALJS must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT)" and explain how any such conflict was resolved. *Id.* Specifically, SSR 00-04p explains that

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Mr. K also refers the Court to *Yokem v. Comm'r of Soc. Sec.*, No. 16-CV-3048, 2017 WL 736297 (C.D. Ill. Feb. 24, 2017). There, another court in this district remanded an ALJ's decision where the ALJ failed to address the VE's testimony that there was an inconsistency between the definition of light work in the DOT and the claimant's RFC limitation that he could only stand or walk for two hours in an eight-hour workday. *Id.* at *5.

The Court first turns to the record. At the hearing, the ALJ asked the VE about her professional qualifications and presented her with various hypotheticals. The ALJ also asked the VE about how conflicts would be addressed. (AR 64-70).

Q      Do you agree to bring it to my attention if any of your testimony's inconsistent with the <u>Dictionary of Occupational Titles?</u>
A      Yes.
. . .
Q      Has your testimony been consistent with the <u>Dictionary of Occupational Titles</u> and its companion publications?
A      Yes, my testimony's consistent with the DOT and its companion publications, however, the DOT does not address a number of areas, such as use of one extremity over another, overhead, or reach, time off task, breaks, or absenteeism, so for these responses, I do rely on my experience and training as a vocational counselor.

Moreover, Mr. K's representative also asked the VE the following question:

Q      [I]s there a sit-stand option in any of these jobs that you listed today?
A      For a sit-stand, an individual must remain in one position for up to at least 20, but more often 30 minutes, at a time to be able to remain on task. However, when considering light work and the types that were given in the hypothetical, most – well, the jobs of – in both hypotheticals, the user and the counter clerk, are generally done in a standing nature. The only two that could afford a sit-stand option at the light level would be the furniture rental clerk, or the office helper, which was ruled in subsequent hypotheticals.

(AR 70). The record also shows that the ALJ propounded interrogatories to another vocational expert in August 2022, about seven months after this hearing. (AR 292, AR 310). The hypotheticals included in the interrogatory ask the VE to opine about an individual who "is able to sit, stand, and/or walk for two hours each at a time." (AR 305). In response, the VE provided three jobs that Mr. K could still perform with an RFC that included this limitation – usher, counter clerk, and school bus monitor. (AR 308). The interrogatories also asked the VE to state whether there were any conflicts between the occupational evidence listed and the information in the DOT, to which the VE responded no. (AR 306-07). Mr. K's representative received this evidence and stated he did not have comments to enter into the record regarding it. (AR 313). Akin to the second VE's response, the ALJ's decision states that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information in the Dictionary of Occupational Titles." (AR 31).

The Commissioner contends that the ALJ's decision should be affirmed because there was no apparent conflict between the VE's testimony and the DOT, and Mr. K failed to raise this issue at the administrative level. "A claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Still, an ALJ's duty to identify and resolve conflicts under SSR 00-4p is only triggered when "when the conflicts are obvious enough that the ALJ should have picked up on them without any assistance." *Id.* Indeed, when the issue is raised for the first time before the Court, a claimant must identify a conflict between the VE's

testimony and the DOT that is (1) actual, (2) material, and (3) apparent to demonstrate that remand is warranted based on a violation of SSR 00–4p. *Plummer v. Berryhill*, No. 3:16-CV-615-MGG, 2017 WL 4416838, at *3 (N.D. Ind. Oct. 4, 2017). The Commissioner contends that, because the DOT does not address sit/stand options such as this limitation, there is no apparent conflict here.

Indeed, the Seventh Circuit has held that VE testimony on an issue "merely supplement[s] (and d[oes] not conflict with) the VE" when the DOT is silent on that issue. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). And, as the Commissioner contends, the Seventh Circuit has addressed whether testimony like that at issue here is considered a conflict. *See Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). There, the Court found that because the DOT does not address the specific subject of a sit/stand option, it is not apparent that VE testimony on this issue conflicts with the DOT. *See id.* Thus, the Court questions whether the VE's testimony on this issue is a conflict triggering the requirements of SSR 00-04p.

Still, Mr. K has urged the Court to remand consistent with the court's decision in *Yokem*. There, the court reversed and remanded an ALJ's decision in part because the VE stated that his testimony was not consistent with the DOT. Despite this, however, the ALJ's decision erroneously stated that the VE's testimony was consistent with the DOT, with no explanation or statement regarding what the VE actually said. 2017 WL 736297, at *7. The Court agrees with the Commissioner that this case is distinguishable because the VE in *Yokem* specifically stated that his testimony was inconsistent with DOT and the ALJ failed to resolve that inconsistency. Here, however, there is no

apparent conflict, the VE never stated as such, and no conflict was identified at the administrative level. Without more, the Court cannot find that this warrants remand.

In addition, SSR 00-04p was rescinded and replaced with SSR 24-3p as of January 6, 2025. SSR 24-3p, https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html. SSR 24-3p states that, by rescinding SSR 00-04p, SSA "will no longer require [its] adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." *Id. Id.* SSA explains that

> [O]ur adjudicative experience since we issued SSR 00-04p has shown that requiring our adjudicators, VSs, and VEs to identify and explain conflicts with the DOT is time consuming. At the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage VSs and VEs from using occupational data in sources other than the DOT.

*Id.* Instead, "when the claimant is represented, [SSA] expect[s] the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." Thus, now "VEs and VSs may use any reliable source of occupational information that is commonly used by vocational professionals . . ., along with their professional knowledge, training, and experience. VEs and VSs may use a combination of these sources when providing occupational evidence. Adjudicators must weigh the VE or VS evidence in the context of the overall record . . .." *Id.* In terms of application, SSR 24-3p was implemented on its effective date of January 6, 2025. Accordingly, "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue

in the decision we make after the court's remand." *See id.* at fn. 1. Thus, SSR 24-3p would be applied if the ALJ's decision were remanded here.

An ALJ's failures do not merit reversal when they are harmless. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). An error is harmless if "the ALJ would reach the same result on remand." *Id.* To make this determination, the court must "look to the record to see 'if '[it] can predict with great confidence what the result on remand will be.'" *Id.* (internal citation omitted). Here, though Mr. K's representative's asked about a sit/stand option at the hearing, his representative did not ask questions about the alleged conflict raised here, nor was this identified as a conflict. The RFC adopted by the ALJ was the RFC posed in post-hearing interrogatories, and was based on the opinion of Dr. Fischer, to which Mr. K's representative did not object. Based on this, coupled with the overall record developed by the ALJ, the Court cannot find remand is warranted on this issue. *See, e.g., Luis L. v. King*, No. 24 C 16585, 2025 WL 389333, at *4 (N.D. Ill. Feb. 4, 2025) (finding any failure to resolve conflicts between VE testimony and DOT harmless based on rescindment of SSR 00-4p); *see also Colleen F. W. v. Comm'r of Soc. Sec.*, No. 3:23-CV-493-SJF, 2025 WL 837815, at *8 (N.D. Ind. Mar. 18, 2025)

## IV.    Conclusion

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 27th day of March 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge